# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas
El Dorado Division

US DISTRICT COURT
WESTERN DIST ARKANSAS
**FILED**
02/24/2022

IN THE MATTER OF THE APPLICATION OF
THE UNITED STATES OF AMERICA FOR AN
ORDER AUTHORIZING A SEARCH WARRANT
OF INFORMATION MAINTAINED BY CELLCO
PARTNERSHIP D/B/A VERIZON WIRELESS,
RELATIVE TO TARGET TELEPHONE BEARING
CELLULAR TELEPHONE
NUMBER **870-904-7344**

No. 1:22-cm-00006

**Filed Under Seal**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location)*:
**See "Attachment A"**

located in the District of New Jersey there is now concealed *(identify the person or describe the property to be seized)*:
**See "Attachment B."** This Court has authority to issue the requested search warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A), and Federal Rule of Criminal Procedure 41.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
[x] evidence of a crime;
[ ] contraband, fruits of crime, or other items illegally possessed;
[x] property designed for use, intended for use, or used in committing a crime;
[ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to violations, in the Western District of Arkansas, of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession of a controlled substance with intent to distribute and distribution of a controlled substance |
| 21 U.S.C. § 846 | Conspiracy and attempt to commit these above-described offenses |
| 21 U.S.C. § 843(b) | Unlawful use of a communication facility to commit and facilitate the commission of drug trafficking offenses |

The application is based on these facts: (See attached affidavit of SA James Arnold, FBI)
[x] Continued on the attached sheet.

[ ] Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*(Appearing by telephone conference call at 415-527-5035)*
SA James Arnold, Federal Bureau of Investigation
*Affiant*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1, by appearing via telephone conference call at 415-527-5035.

Date: 2-24-22

*Judge's signature*

City and state: Texarkana, AR

Hon. Barry A. Bryant, United States Magistrate Judge, W. D. Ark.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING A SEARCH WARRANT OF INFORMATION MAINTAINED BY CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, RELATIVE TO TARGET TELEPHONE BEARING CELLULAR TELEPHONE NUMBER **870-904-7344** | Case No. _____ <br><br> **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, James Arnold, a Special Agent with the Federal Bureau of Investigation, (FBI), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the FBI and have been so employed since October of 2019. Prior to my employment with the FBI, I served as a law enforcement officer in South Carolina for approximately nine and one-half years. During that time, I also served as a criminal analyst for the South Carolina Governors Counterdrug Task Force assigned to the Drug Enforcement Administration (DEA). I am currently assigned to the El Dorado Resident Agency of the Little Rock Division within the FBI. During my employment with the FBI, I have received training concerning and been involved in the investigations of numerous federal offenses to include federal drug trafficking offenses in violation of Title 21 U.S.C. § 841(a)(1) and conspiracy to do the same in violation of Title 21 U.S.C. § 846.

2. I make this affidavit in support of an application for a warrant authorizing the seizure and search of (among other items described in Attachment B hereto) the content of

certain stored electronic communications sent to and from, or associated with, telephone number 870-904-7344, which number is further described in Attachment A hereto (hereinafter the "TARGET TELEPHONE" or "TT1"), for which service is provided by Cellco Partnership, d/b/a Verizon Wireless, and/or its parent or subsidiary entities, an electronic communications service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey, in the District of New Jersey (hereinafter "Verizon Wireless" or "Verizon"). The items to be seized and searched are stored at premises owned, maintained, controlled, and/or operated by Verizon Wireless. Pursuant to 18 U.S.C. § 2703(a) and Federal Rule of Criminal Procedure 41, I seek a search warrant requiring Verizon Wireless to disclose, and permitting the government to search, the items set forth in Attachment B, as explained further below.

3. Pursuant to Section 2703(a), a "governmental entity" may require "a provider of electronic communication services" to disclose "the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for 180 days or less, only pursuant to a warrant" issued under the Rules of Criminal Procedure by a "court of competent jurisdiction."

    a. The Federal Bureau of Investigation (FBI) is a governmental entity. *See* 18 U.S.C. § 2711(4).

    b. Verizon Wireless is a provider of electronic communication services. *See* 18 U.S.C. § 2510(15).

    c. Text messages and picture content are electronic communications. *See* 18 U.S.C. § 2510(12).

    d. If requested, Verizon Wireless maintains in an electronic communications system (18 U.S.C. § 2510(14)) the contents (18 U.S.C. § 2510(8)) of certain electronic

communications (18 U.S.C. § 2510(12)) associated with a cellular telephone. *See* 18 U.S.C. §2703(f). In this instance, Verizon Wireless has been asked to retain text messages and picture content associated with TT1 via a preservation request provided by the FBI. The date range is less than 180 days from the date of this affidavit and the accompanying applications.

    e.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is a District Court of the United States in the Western District of Arkansas that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## ITEMS TO BE SEARCHED

4.    This affidavit is being submitted in support of an application for a warrant authorizing the seizure and search of the content of electronic communications described in Attachment B, which are stored and maintained by Verizon Wireless in relation to TT1, and which I have probable cause to believe constitute and/or contain evidence and/or instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) (distribution of, and/or possession with intent to distribute, methamphetamine, a Schedule II controlled substance), 843(b) (use of a communication facility to facilitate the distribution of, and/or possession with intent to distribute, methamphetamine), and 846 (attempt and/or conspiracy to distribute, and/or to possess with the intent to distribute, methamphetamine).

5.    From my training and experience as an FBI Agent, and from communications with Verizon Wireless representatives, I know the following:

3

a. Drug traffickers regularly maintain and use wireless telephones, which are used in furtherance of a multitude of illegal endeavors including but not limited to smuggling, distribution, and money laundering.

b. Drug traffickers frequently purchase such telephones as pre-paid devices (not requiring the consumer to provide identification at the time of purchase), which allow the respective trafficker to maintain the devices in relative anonymity.

c. Members of drug organizations frequently purchase and discard telephones within short periods of time, so as to avoid detection by the police. The discarding of a telephone can occur even sooner than planned, in the event that an occurrence such as a law enforcement action results in a potential security breach for the organization.

d. Drug traffickers often utilize short message service (SMS, also known as text messaging) and multimedia messaging service (MMS, also known as picture messaging) as opposed to traditional voice calls, in order to avoid telecommunications wherein the trafficker's voice could be recognized by law enforcement agents conducting a wiretap, and to make further use of coded messaging, designed to thwart detection or investigation by law enforcement.

e. Drug traffickers and drug couriers frequently maintain contact with one another via telephone or SMS/MMS, in order to ensure the integrity of smuggled drugs or drug proceeds while the contraband is in transit.

f. Verizon Wireless is a company which provides cellular telephone access to the general public, and that stored electronic communications, including text messages and picture content for Verizon Wireless subscribers may be located on the computers of

4

Verizon Wireless. Further, I am aware that computers located at Verizon Wireless contain information and other stored electronic communications belonging to unrelated third parties.

  g. Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging." Based on my knowledge and experience, I believe that stored electronic communications, including text messages and picture content, that have been sent or received by subscribers, can be stored by Verizon Wireless for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of electronic communications for a particular subscriber's account.

  h. Wireless phone providers, such as Verizon Wireless, typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Such providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved. Wireless providers

may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. In my training and experience, wireless providers like Verizon also commonly retain information and records tending to establish the identity(ies) of subscriber(s) to, and/or account holder(s) for, specific telephone numbers. Such records often include, among other things, A) copies of service and/or credit applications completed or submitted by such account holders or subscribers, and B) detailed information relating to the method(s) of payments made by, or to the benefit of, such account holders or subscribers.

    i.  In my discussions with Verizon Wireless representatives, I have learned that Verizon's ability to preserve the content of electronic communications is contingent on a number of technological factors. Although Verizon accepts preservation letters relating to the content of electronic communications, their ability to complete the requested preservation depends on various technological factors, including system limitations, system outages, and upgrades. According to a Verizon representative I communicated with, the company can usually retrieve (and preserve, if asked to) the content of electronic communications, such as those described in Attachment B, for between three (3) and seven (7) days after each such communication is sent or received by a subscriber. If technological factors permit, Verizon will preserve the content of such electronic communications when requested to do so by law enforcement, and will release them to law enforcement only through proper legal process, such as the requested search warrant.

6. Portions of the information provided in this affidavit were provided to me by other law enforcement officers, who either relayed the information to me directly, or whose report I have reviewed. Not all of the information which I have gathered during the course of this investigation is included in this affidavit, but rather, only those facts which I believe to constitute probable cause allowing agents to obtain the stored contents of electronic communications relative to TT1.

## PROBABLE CAUSE

7. In April of 2018, the FBI's El Dorado Resident Agency (RA) opened an investigation into a Drug Trafficking Organization (DTO) based in Magnolia, Columbia County, Arkansas, which is in the Western District of Arkansas. The portion of the investigation involving WALTERS was initiated based on intelligence gathered from a confidential source. WALTERS and several co-conspirators have been identified as being involved in street gang activity and poly-drug trafficking in and around Columbia County, Arkansas. As detailed below, WALTERS is believed to be a large quantity poly-drug distributer, and is also a member of the PJ Watts Crips (PJWC) criminal gang. WALTERS is believed to store narcotics and firearms at several locations within Columbia County, Arkansas.

### Information Provided by CS2

8. In January of 2022, Agents interviewed a Confidential Source (hereinafter "CS2") who was seeking government consideration for alleged criminal activity. CS2 stated that they met WALTERS in July of 2021, at which time they had observed what WALTERS said was five pounds of methamphetamine, 1,500 ecstasy pills, and 250 Roxicodone pills at WALTERS residence on Linda Street, in Magnolia, Arkansas. During that meeting, CS2 stated WALTERS provided CS2 one pound of methamphetamine for CS2 to distribute, with the expectation that

CS2 would pay WALTERS for the drugs later, from the proceeds of their re-sale. Between July 2021 and January of 2022, CS2 stated that they obtained approximately 8-10 pounds of methamphetamine from WALTERS. CS2 identified WALTERS telephone number as TT1. Furthermore, CS2 allowed agents to see text messages between CS2 and TT1 on CS2's phone. In my training and experience, these messages were indicative of drug trafficking, and incriminated both CS2 and the user of TT1. They also appeared to corroborate CS2's statements regarding WALTERS' involvement in drug trafficking. Following is one such text message conversation which, based on information consensually gleaned from CS2's phone, took place on or about December 5, 2021:

- **CS2:** Here
- **TT1:** You know you give her 36
- **CS2:** And 3 that's 39 she bck at the crib I just got a dolla I'll take it to her
- **TT1:** Yeah
- **CS2:** Ight Um one of these is 820 ima make it right tho he just sent me a picture of it *[Agent note: Attached to this message was a photograph of a crystal-like substance in a plastic bag on digital scales. The scale appears to read 820.7 grams which is approximately 1.8lbs. The crystalline substance in the photograph is consistent in appearance with methamphetamine, based upon my training and experience.]*

### Toll Analysis of TT1

9.     Pursuant to an FBI administrative subpoena, Verizon Wireless provided subscriber and toll records for TT1 for the time period of December 1, 2021, to January 24, 2022. The records revealed that TT1 has been active since November 9, 2021. Verizon advised

that no specific subscriber information was available for TT1, because the telephone number reseller was Tracfone Wireless, d/b/a Straight Talk, which does not collect such information. From your affiants training and experience, I know it is very common for individuals distributing narcotics to utilize telephone numbers with no specific subscriber information, in order to avoid detection by law enforcement. However, I also know that other types of records commonly kept by wireless service providers, including information about method(s) of payment for service, can help identify the subscriber(s) or account holder(s) for a particular telephone number, even where specific subscriber information is not retained.

10. FBI personnel have conducted toll analysis regarding TT1. In so doing, they have observed a significant number of contacts by TT1 with several other known poly-drug distributors, some of whom law enforcement have previously conducted controlled purchases of illegal drugs from. Between December 1, 2021, and January 24, 2022, TT1 had approximately 5,306 incoming and outgoing text messages and telephone calls. During that time, TT1 was in contact with multiple telephone numbers associated with unknown individuals utilizing area codes in Arkansas, Louisiana, California, Florida, Illinois, Nevada, and Georgia. TT1 was also observed to have had contact during that period with several telephone numbers known to be used by narcotics distributors connected with this investigation, and also other drug investigations. Based on my training and experience, this toll analysis supports the conclusion that TT1 is being used in connection with drug trafficking activities in the Western District of Arkansas.

### February 2022 Controlled Purchase of Methamphetamine

11. In early February 2022, CS2 made a consensually monitored telephone call to WALTERS at TT1, in order to arrange a later controlled purchase of methamphetamine from

WALTERS. The call was recorded and completed in the presence of Agents. During the call, WALTERS answered and immediately told CS2 that he would 'hit him right back,' which I know, from my training and experience, is slang indicating that WALTERS would return CS2's call shortly. Soon thereafter, CS2 received a return call from WALTERS, this time calling from the telephone number 323-841-0813. Area code 323 is assigned to areas of Los Angeles, California. During that call, which was also recorded, CS2 requested two (2) pounds of methamphetamine, to which WALTERS responded "Let me know when you're on your way. I'll have that shit put together for you." CS2 indicated that he/she believed that WALTERS was probably in California at the time, resupplying on methamphetamine.

12. On or about February 10, 2022, acting under the control and supervision of the FBI, CS2 conducted a controlled purchase of approximately 453 grams (about one pound) of methamphetamine from WALTERS, via an unknown male intermediary (hereinafter UM), in McNeil, Columbia County, Arkansas. While meeting with agents prior to that buy, CS2 also showed agents text messages between CS2 and TT1, in which WALTERS told CS2 to give the cash to 'his boy.' In the presence of Agents, CS2 sent a text message to the TT1 advising WALTERS of his/her location and asking what to do. Soon thereafter, CS2 received a telephone call from UM at 870-949-4757, who advised CS2 where to meet him. CS2 also received a text message from TT1 which shared the UM's contact information, including the above phone number ending in 4757. After being equipped with one or more covert audio/video recording devices, with which to record the transaction, CS2 then departed the meeting with agents and met the UM, who led him/her by vehicle to a residence in McNeil, Arkansas.

13. After the transaction, CS2 returned to meet investigators at a predetermined location. There, CS2 turned over approximately 453 grams of suspected methamphetamine

10

which he/she indicated had been purchased from UM, who was acting on behalf of WALTERS. CS2 also indicated that, while he/she was at the McNiel residence with UM, CS2 called WALTERS at TT1 twice; first to confirm the purchase of one pound of methamphetamine, and later to confirm payment. A sample of the suspected methamphetamine turned over by CS2 was later subjected to a NIC field test capable of detecting the presence of controlled substances, including methamphetamine. The field test yielded a presumptive positive indication for the presence of methamphetamine. Your affiant has also reviewed the audio/video recording captured by the devices carried by CS2 during this early February 2022 buy, and has found that it is consistent with CS2's description of what took place.

### Preservation Requests to Verizon Wireless

14. On February 9, February 11 and February 16, 2022, I served written requests upon Verizon Wireless, asking in each case that Verizon preserve records and information relating to TT1. In the February 9 and February 11 requests, I asked Verizon to preserve all available records relating to TT1 for 180 days. In the February 16 request, I specifically asked Verizon to preserve, for 180 days, the content of certain electronic communications to and from TT1, which are further described in Attachment B. Considering Verizon's normal retention period for the contents of such communications, and in light of the company's practice of compliance (when technologically possible) with law enforcement preservation requests (both of which are set forth in Paragraph 5(i), above), I therefore have probable cause to believe that any and all electronic communications described in Attachment B, sent or received by TT1 on or between the dates of February 2 and February 16, 2022, still remain in the possession, custody or control of Verizon Wireless as of the date of this affidavit.

## INFORMATION TO BE SEARCHED AND ITEMS TO BE SEIZED

15. I anticipate executing this warrant under the Electronic Communications Privacy Act—in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A). The applied-for warrant would require Verizon Wireless to disclose to the government the records and information (including content of wireless communications) described in Attachment B, which are associated with the TARGET TELEPHONE described in Attachment A.

## CONCLUSION

16. Based on the foregoing, I have probable cause to believe that the electronic communications described in Attachment B are presently stored and maintained by Verizon Wireless in relation to TT1, and that those communications and their content are, or contain, evidence and/or instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) (distribution of, and/or possession with intent to distribute, methamphetamine, a Schedule II controlled substance), 843(b) (use of a communication facility to facilitate the distribution of, and/or possession with intent to distribute, methamphetamine), and 846 (attempt and/or conspiracy to distribute, and/or to possess with the intent to distribute, methamphetamine). I therefore respectfully request that the Court issue the proposed search warrant.

## REQUEST FOR SEALING AND EXTENSION OF NOTIFICATION

17. I further request that the Court order that all papers in support of the applications, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

18. Furthermore, since this investigation is in its early stages, and agents believe that the contents of the text messages sought may well generate investigative leads linked to a larger and/or ongoing investigation(s), it is believed that immediate notification as to existence of this Court's Order authorizing a search warrant of the text messages associated with TT1 could (and likely would) cause an adverse result to associated investigations. More specifically, it is likely that such a notification would cause additional subjects of investigation to further camouflage their illegal activities by changing telephone numbers, and/or destroying evidence.

Respectfully submitted,

(Appearing by telephone conference call at 415-527-5035)
Special Agent James Arnold
Federal Bureau of Investigation

Attested to by the affiant in accordance with the requirements of Fed. R. Crim. P. 4.1, by appearing via telephone conference call at 415-527-5035 on this 24th day of February, 2022.

HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with telephone number 870-904-7344 (the TARGET TELEPHONE) which is stored at premises owned, maintained, controlled, and/or operated by Cellco Partnership, d/b/a Verizon Wireless, and/or its parent or subsidiary entities, an electronic communications service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey, in the District of New Jersey.

## ATTACHMENT B

### Particular Items to be Seized

### I. Information to be disclosed by Verizon Wireless

To the extent it is within the possession, custody, and/or control of Cellco Partnership, d/b/a Verizon Wireless, and/or its parent or subsidiary entities, (hereinafter "Verizon"), Verizon is required to disclose the following information to the government, in relation to each account or identifier listed in Attachment A:

(a) the content, dates and times of any and all text and multimedia messages, including any audio, video, and pictures, sent to or from the telephone number identified in Attachment A on or between February 2, 2022, and February 16, 2022;

(b) all identification numbers (IMEI, IMSI, etc.) associated with the device(s) and/or handset(s) to which the telephone number identified in Attachment A was assigned on or between February 2, 2022, and February 16, 2022;

(c) all transactional information relating to activity of the telephone number identified in Attachment A on or between February 2, 2022, and February 16, 2022, including log files, messaging logs, local and long-distance telephone connection or call records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls;

(d) any and all information and records relevant to establishing the identity(ies) of any subscriber(s) or account holder(s) for the telephone number described in Attachment A during the period on or between February 2, 2022, and February 16, 2022. Such information and records should include, but not necessarily be limited to, copies of any service and/or credit applications associated with, or submitted by, such account holders or subscribers (regardless of when executed or submitted), and any and all information relating to payments made by, or to the benefit of, such account holders or subscribers (regardless of when made).

### II. Information to be seized by the government

All information described above in Section I that constitutes and/or contains evidence and/or instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) (distribution of, and/or possession with intent to distribute, methamphetamine, a Schedule II controlled substance), 843(b) (use of a communication facility to facilitate the distribution of, and/or possession with intent to distribute, methamphetamine), and 846 (attempt and/or conspiracy to distribute, and/or to possess with the intent to distribute, methamphetamine).